**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09-CV-00132-RLV
(5:06-CR-00035-RLV-DCK-12)**

| | | |
|---|---|---|
| ROSS LANCE PRICE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Respondent's motion to deny and dismiss Petitioner's Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Respondent's motion will be granted, and Petitioner's Section 2255 motion will be denied and dismissed.

## I.  BACKGROUND

On June 28, 2006, Petitioner was charged with two counts in a sealed indictment returned by the grand jury sitting for Western District of North Carolina. (5:06-CR-00035, Doc. No. 3). The criminal charges included conspiring to possess with intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count One), and a second charge of intentionally possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. (Count Eleven). (Id. at 1, 6). On July 6, 2006, Petitioner was arrested and the next day he made his initial appearance before the magistrate judge and was appointed counsel. Petitioner entered a plea of not guilty and the parties prepared for a trial by jury.

1

On September 10, 2007, Petitioner appeared with counsel before the undersigned and decided to withdraw his plea of not guilty and enter a plea of guilty to Counts One and Eleven of the indictment, without benefit of a plea agreement. The Court conducted Petitioner's Rule 11 hearing. Petitioner was placed under oath and the Court informed him of, among other things, the charges against him, the minimum and maximum penalties he faced if convicted, his right to plead not guilty and proceed to trial by jury, and the Government's burden of proof at trial, his right to present a defense, and cross-examine witnesses against him. The Court was satisfied that Petitioner understood his rights, and thereafter found that Petitioner's pleas of guilty were entered knowingly and voluntarily.

The United States Probation Office prepared a presentence investigation report ("PSR") which was served on Petitioner and the Government. The PSR found that Count One involved a conspiracy of the possession with intent to distribute at least 500 grams of methamphetamine. (Doc. No. 409: PSR at 4 ¶ A(1)). The PSR concluded that the conspiracy to which Petitioner had pleaded guilty began in January 2001 and involved a conspiracy which had moved over 100 pounds of methamphetamine. (Id. at 4 ¶ A(4)).

On May 5, 2008, Petitioner appeared with counsel before the Court for his sentencing hearing. Petitioner informed the Court that he had reviewed the PSR with his attorney and discussed its contents in detail. Petitioner's counsel noted an objection to the drug quantities contained in the PSR. Petitioner's counsel stated that while Petitioner was involved in the conspiracy, he only played a limited role when compared with the other defendants. The Court noted Petitioner's objection and provided Petitioner with the opportunity to put on evidence regarding the drug quantity at issue. (Doc. No. 451: Sentencing Transcript at 2-3). Petitioner was called to the stand and provided sworn testimony. Petitioner testified that he began using

marijuana in his mid-teens, in roughly 1999, and then quickly graduated to cocaine and then crack, acid, ecstasy and methamphetamine. (Id. at 5-6). Petitioner was spending his entire paychecks on drugs and once he began using methamphetamine he resorted to cashing counterfeit checks in order to support his habit. (Id. at 7). In 2004, Petitioner moved from Caldwell County to Salisbury, North Carolina, and his drug use eased upon the arrival of his daughter who was born on March 27, 2004. However, Petitioner moved back to the Caldwell County area in early 2005 and began spending time with some of the defendants named in his indictment. On some occasions, Petitioner's parents assisted Petitioner by offering to pay his child support obligations. However, Petitioner loaned the money provided by his parents to other people in return for drugs. Petitioner admitted that he was a drug addict, and that he knew the people named in the indictment and was in fact friends with and used drugs with them. But he tried to minimize, or flatly deny his role in the conspiracy as alleged in Counts One and Eleven of his indictment. In his testimony, Petitioner's labored to portray the notion that his involvement with methamphetamine was limited to purchasing the drug for personal use. Petitioner denied that he sold the drug, but he admitted that he did share the drug with some of those co-defendants named in his indictment. (Id. at 17-20).

Petitioner's sister, Jennifer Hair, also testified during Petitioner's sentencing hearing. She admitted she was a drug user and currently in a drug rehabilitation center. (Id. at 31-32). Hair admitted that Petitioner was a drug user but she denied that he sold drugs. She stated that he was stingy with his drugs, and it was her opinion that Petitioner was implicated in the conspiracy because one of its principal architects, co-defendant Joey Hice, had lied about Petitioner's involvement. (Id. at 43-44).

Petitioner's parents provided testimony that Petitioner had been a drug addict since 1999

and he had tried to get help for his addiction but he had always gone back to using. Petitioner's father acknowledged that Petitioner was acquainted with Joey Hice and that Petitioner was "in the gang" with Hice. (Id. at 54).

The Government offered evidence from Special Agent Christopher Morgan from the Drug Enforcement Administration. (Id. at 62). Morgan testified that he served as the lead case agent since March 2005, and he conducted interviews with several witnesses and every defendant in Petitioner's case. (Id. at 63-64). One defendant, Forest Smith, informed Morgan that he sold "user quantities" and "distribution quantities" to the Petitioner on numerous occasions and Smith's statement was corroborated by many individuals, including Joey Hice. Morgan testified that all of the information he provided to the probation office was information he had personally gathered through his investigation. (Id. at 64-66, 68). Morgan testified that when Petitioner first became involved with Joey Hice, Petitioner was primarily a user, but his time spent solely as a user quickly evolved into a his role as a distributor as well. Morgan testified that in their role as distributors, Hice and Petitioner beginning to purchase larger quantities of methamphetamine and then sell and distribute the drug to co-defendants and other individuals not named in the indictment. (Id. at 67-68). Morgan testified that the amount of methamphetamine involved was conservatively estimated at 1,153 grams, and this is the amount he communicated to the probation officer. (Id. at 71; Doc. No. 409 at 6 ¶ 17). While Morgan acknowledged that Petitioner was now accepting responsibility for the possession of 35 to 45 grams of methamphetamine, based on his investigation, Morgan estimated that Petitioner was likely responsible for possession of 35 to 40 ounces of the drug during the conspiracy. (Doc. No. 451 at 72).

Following argument from defense counsel, and consideration of the evidence presented,

the Court overruled Petitioner's objection to the drug amount found in the PSR and found by a preponderance of the evidence that Petitioner's involvement in the conspiracy to possess with intent to distribute methamphetamine involved more than 500 grams. (Id. at 86). The Court noted that the only objection raised by Petitioner to the PSR was to the drug quantity. The Court further found the PSR to be a credible and reliable source of information and therefore adopted the PSR as written. (Id. at 86-87).

On the issue of sentence, Petitioner's counsel acknowledged Petitioner was a long-time drug addict, that he had learned from his mistakes. He asked for a sentence at the lowest end of the guidelines and asked that Petitioner be allowed to participate in drug rehabilitation in the Bureau of Prisons. (Id. at 87). During allocution, Petitioner apologized to his family and friends for his involvement, and acknowledged that he knew what he was doing was wrong. (Id. at 88). The Court then sentenced Petitioner to a sentence of 120-months for conviction of Counts One and Eleven, with both sentences to run concurrently. (Doc. No. 433: Judgment in Criminal Case at 2).

Petitioner filed a timely appeal from his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. On appeal, Petitioner argued that the district court erred in determining the quantity of drugs for purposes of calculating his sentence. The Fourth Circuit disagreed. The Court found that Petitioner bore the burden of raising a proper objection to the drug quantity prior to sentencing and that mere objections to the amount contained in the PSR was insufficient. The Court further found that Petitioner had the burden of showing that the quantity contained in the PSR was incorrect. In its per curiam Opinion, the Court affirmed Petitioner's conviction and sentence in all respects. United States v. Price, 305 F. App'x 70 (4th Cir. 2008) (unpublished). (Doc. No. 472). Petitioner did not file a petition for a writ of certiorari

with the United States Supreme Court.

On November 19, 2009, Petitioner filed this timely Section 2255 motion to set aside his sentence. Petitioner also moves the Court to order a new sentencing hearing. (5:09-CV-00132, Doc. No. 1). In his motion, Petitioner contends that he received ineffective assistance of counsel at the trial level and on appeal. (Id. at 3-5). As will be discussed in detail below, Petitioner's arguments are without merit and will therefore be denied and dismissed.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. The Court conducted this initial review and ordered the Government to file a response. In its response, the Government contends that the Petitioner's Section 2255 motion is without merit and should be denied. (Doc. No. 10).[1]

Petitioner requests an evidentiary hearing. (Doc. No. 1 at 13). After having considered the record in this matter, including the testimony provided during Petitioner's sentencing hearing, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

In Ground One of his Section 2255 motion, Petitioner contends that he received ineffective assistance from his trial counsel because his counsel failed to conduct a proper

---

[1]Following the filing of the Government's Response, the Court advised Petitioner, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of his obligation to respond. (Doc. No. 11).

investigation and call witnesses for his defense. (Doc. No. 1-1: Petitioner's Memorandum at 2). In Ground Two, Petitioner asserts that he received ineffective assistance of appellate counsel because his "counsel failed to comprehensively investigate and develop a complete record evincing the impact of the government misconduct." In Ground Three, Petitioner maintains that he received ineffective assistance of appellate counsel when his "counsel failed to comprehensively brief the issue to the Circuit and when counsel failed to raise key witness[]." (Id.)

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687–91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 142, 170 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d at 1430–31 (4th Cir.1983)). Therefore, if Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir.1998). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was

fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

A petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption of effective assistance, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir.1983). Indeed, the petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where defendant has pled, he must show that but for counsel's unprofessional errors, he would have gone to trial instead of pleading guilty. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In order to demonstrate an entitlement to relief when the claim involves a sentencing issue, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248–49 (4th Cir.1999).

To prevail on a claim of ineffective assistance of appellate counsel, the Petitioner must demonstrate that counsel's representation on appeal was objectively unreasonable, and that but for his counsel's errors, Petitioner would have prevailed on appeal. Smith v. Robbins, 528 U.S. 259, 285-86 (2000). Petitioner's appellate counsel is not required to plead all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal. Id. at 288. "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).

A.    Ground One

_____ Petitioner's first claim for relief contends his trial counsel failed to adequately challenge

8

the Government's allegation that the amount in involved in the conspiracy was more than 500 grams of methamphetamine. Petitioner argues that by failing to call crucial defense witnesses, the drug quantity was not effectively challenged. (Doc. No. 1-1 at 16). This argument is without merit.

Petitioner appeared for his Rule 11 hearing with counsel before this Court and, while under oath, explained that he understood the purpose of the Rule 11 hearing and he acknowledged his willingness to plead guilty. (5:06-CR-00035, Doc. No. 450: Transcript of Plea and Rule 11 Hearing, at 4-5). The Court cautioned that if Petitioner willfully provided a false answer to any of the Court's questions, particularly regarding an offense to which he was pleading guilty, that the Government could initiate a separate prosecution for perjury, and Petitioner explained that he understood.  (Id. at 5-6). Petitioner admitted that he had reviewed the charges in his indictment with his attorney and that he understood the contents of the indictment. The Court read aloud Counts One and Eleven from Petitioner's indictment. The Court noted that Count One alleged that Petitioner conspired to possess with intent to distribute at least 500 grams of methamphetamine, and Petitioner acknowledged that he understood the charge. (Id. at 8-9). Petitioner's counsel informed the Court that Petitioner did not agree to the drug quantity amount of 500 grams, and the Court acknowledged this. (Id. at 9). The Government clarified that Petitioner was agreeing to plead guilty to Count One, and allow the Court to determine the drug quantity amount at his sentencing hearing, and Petitioner's counsel stipulated to that fact. (Id. at 10). The Court explained that Petitioner could plead not guilty and allow the jury to determine what amount of drugs were at issue, if any, and that the standard of proof was beyond a reasonable doubt. Or Petitioner could exercise his right to plead guilty and agree to allow the Court to determine the amount of drugs at issue in the conspiracy. The Court stated the

evidentiary standard in that situation was by a preponderance of the evidence. Petitioner admitted that he understood these rights and that he still wished to plead guilty and allow the Court to make the determination regarding drug quantity. (Id. at 10-11). Following this review of the indictment and colloquy, Petitioner averred that he was entering his guilty plea because he was in fact guilty of the crimes as charged in Counts One and Eleven, however, Petitioner maintained his objection to the drug quantity. (Id. at 28). Based on the sworn statements provided by Petitioner, the Court accepted Petitioner's pleas of guilty to Counts One and Eleven after finding that Petitioner's decision to plead guilty was made knowingly and voluntarily and with full understanding of the consequences of the plea. (Id. at 38).

A defendant's sworn statements given in open court during a Rule 11 hearing carry a strong presumption of truth and represent "a formidable barrier in any subsequent collateral proceeding." Blackledge, 431 U.S. at 74. "To adopt a more lenient approach and 'allow indiscriminate hearings in federal post-conviction proceedings . . . would eliminate the chief virtues of the plea system-speed, economy, and finality.'" United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (citing Blackledge, at 71).

Petitioner averred during his Rule 11 hearing that he was waiving his right to have the jury determine the drug quantity at issue beyond a reasonable doubt. Instead, Petitioner agreed that the Court would determine the amount of drugs at issue in the conspiracy by a preponderance of the evidence at his sentencing hearing. The Court received testimony from witnesses called by Petitioner's counsel and evidence from Special Agent Morgan for the Government. Contrary to Petitioner's late contentions, his trial counsel presented a vigorous presentation during his sentencing hearing, and provided a sound cross-examination of Special Agent Morgan regarding the drug quantity. That the Court found the Government's evidence

more persuasive than Petitioner's self-serving testimony does not present sufficient grounds to now conclude that Petitioner's trial counsel was ineffective.

Petitioner's attack on his trial counsel's decision regarding which witnesses to call, and how to present evidence or attack the credibility of Special Agent Morgan during the sentencing hearing are unavailing. As the Court noted earlier, Morgan interviewed each co-defendant and other unindicted witnesses and the conservative amount Morgan believed was involved in the drug conspiracy was 35 to 45 ounces. Many of those indicted reached plea deals with the Government and it would hardly have advanced Petitioner's cause to have those witnesses appear in court and confirm Morgan's observations, or to confirm that Petitioner, as a co-conspirator was responsible for more than 500 grams.

The Court has concluded that Petitioner's counsel did not provide ineffective assistance of counsel at Petitioner's sentencing hearing. Petitioner's attacks on the drug quantity are therefore foreclosed through this Section 2255 action. The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). As the Fourth Circuit noted in his appeal, "the defendant is responsible for his own acts, as well as for 'all reasonably foreseeable acts' of his co-conspirators taken in furtherance of the joint criminal activity." Price, 305 F. App'x at 71 (quoting United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) (internal citation omitted). The Court observed that the "Guidelines do not require precise calculations of drug quantity, the district court's approximation is not clearly erroneous if supported by competent evidence." Id. (citing Randall, 171 F.3d at 210). The "district court may consider any relevant and reliable evidence before it, including hearsay." Id. (citing United States v. Bowman, 926 F.2d 380, 381-82 (4th Cir. 1991)). The Court observed that "hearsay alone can provide sufficiently reliable

evidence of drug quantity." Id. at 72 (citing United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992)). Even "[h]earsay statements of co-conspirators may be considered reliable." Id. (citing United States v. Love, 134 F.3d 595, 607 (4th Cir. 1998). The Court examined the record and affirmed Petitioner's conviction and sentence, including the Court's finding of drug quantity.

For the reasons stated herein, Petitioner's claim for ineffective assistance of trial counsel is overruled.

      B.    Grounds Two and Three

Petitioner's final two claims attack the performance of his appellate counsel, who also served as his trial counsel. In Ground Two, Petitioner asserts that he received ineffective assistance of appellate counsel because his "counsel failed to comprehensively investigate and develop a complete record evincing the impact of the government misconduct." In Ground Three, Petitioner maintains that he received ineffective assistance of appellate counsel when his "counsel failed to comprehensively brief the issue to the Circuit and when counsel failed to raise key witness[]." These grounds for relief are without merit.

In Ground Two, Petitioner asserts ineffective assistance of appellate counsel arguing that his counsel failed to develop the record to demonstrate the impact of government misconduct. (5:09-CV-00132, Doc. No. 1-1 at 25). The misconduct which Petitioner references is the alleged conduct of Eric Smith. The Court heard testimony that an agent from the Caldwell County Sheriff's Department, Eric Smith, initiated the investigation into the criminal activity which formed the basis of Petitioner's indictment. Special Agent Morgan testified that Smith resigned from the Caldwell County Sheriff's Department, and consequently from the investigation, amid allegations that he was having illicit affairs and participating in illegal activity. The Court finds

that Petitioner has failed to demonstrate prejudice on this issue.

The Court found Special Agent Morgan's testimony during the sentencing hearing to be credible and reliable. Morgan testified that he had worked with Smith and knew about his resignation. Morgan testified that he took over as lead case agent in March 2005 and that he re-interviewed every witness interviewed by Smith in the investigation and ensured that the witnesses later statements were corroborative of their statements to Smith. Morgan was thoroughly confident that the statements accurately represented the drug quantities involved in the conspiracy. Those statements formed the basis for the drug quantities for which he believed Petitioner was responsible. (5:06-CR-00035, Doc. No. 451 at 62-72).

The Court finds that Petitioner was not prejudiced and would not have been helped on appeal by further development of the record, particularly with regard to Eric Smith. Special Agent Morgan's testimony provides ample evidence that the statements he relied on, and which the PSR in turn relied on, in determining the drug quantity, support a finding that Petitioner was responsible for over 500 grams of methamphetamine. This Second Ground is therefore overruled.

Petitioner's final argument is essentially a reiteration of his Second Ground for relief. The Court finds that further development of the record, and further argument, or briefing, on appeal on the issue of Eric Smith, or any other issues, would not have changed the outcome of Petitioner's appeal. Petitioner's Third Ground for relief is overruled.

In sum, Petitioner agreed to plead guilty and forego his right to have the jury determine the amount of methamphetamine involved in the charged conspiracy beyond a reasonable doubt. Petitioner knowingly and voluntarily waived that right and agreed to have the Court make the determination regarding drug quantity using a preponderance of the evidence standard. Petitioner

is unable to carry his heavy burden of proving that his counsel, trial and appellate, provided ineffective assistance of counsel. Accordingly, Petitioner's Section 2255 is denied and dismissed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion, (5:09-CV-00132, Doc. No. 1), is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (stating that in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: August 13, 2012

Richard L. Voorhees
United States District Judge